UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HEIDIE M SCHUYLEMAN,

        Plaintiff,

v.

NANCY A BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

CASE NO. 2:17-CV-00523-RSL-DWC

REPORT AND RECOMMENDATION

Noting Date: December 15, 2017

The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff filed this matter seeking judicial review of Defendant's denial of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI").

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to properly consider all of Plaintiff's severe impairments at Step Two and the medical opinion evidence. Had the ALJ properly considered all of Plaintiff's severe impairments at Step Two and the medical opinion evidence, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless,

and the undersigned recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Report and Recommendation.

## FACTUAL AND PROCEDURAL HISTORY

On November 14, 2013, Plaintiff filed an application for DIB, and on November 19, 2013, Plaintiff filed an application for SSI. *See* Dkt. 8, Administrative Record ("AR") 25. In both applications, Plaintiff alleged disability as of August 18, 2012.[1] AR 25. The applications were denied upon initial administrative review and on reconsideration. *See* AR 25. ALJ Glenn G. Meyers held a hearing on October 7, 2015. AR 44-82. In a decision dated December 3, 2015, the ALJ determined Plaintiff to be not disabled. AR 25-38. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-3; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to find Plaintiff's lumbar radiculopathy was a severe impairment at Step Two; (2) discounting the medical opinions of Drs. Mark Heilbrunn, M.D., and Kerry Bartlett, Ph.D.; (3) failing to provide specific, clear and convincing reasons to discredit Plaintiff's subjective symptom testimony; and (4) making Step Five findings which were not supported by substantial evidence. Dkt. 10, pp. 1, 3-18.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by

---

[1] Plaintiff previously applied for DIB and SSI. AR 25. Those applications were initially denied on March 5, 2013, and the ALJ found them administratively final. AR 25. Therefore, although Plaintiff alleged disability beginning August 18, 2012, the ALJ found – and Plaintiff did not challenge – the beginning date for the period at issue was March 6, 2013, the day after the previous determination. AR 25; *see also* Dkt. 10, 17.

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.  Whether the ALJ properly assessed all of Plaintiff's severe impairments at Step Two of the sequential evaluation process.**

Plaintiff first argues the ALJ erred by failing to find her left-sided lumbar radiculopathy was a severe impairment at Step Two. Dkt. 10, pp. 3-7.

Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. § 140.1521(b)). An impairment or combination of impairments "can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling "SSR" 85-28)).

A.  Severe Impairment

At Step Two, the ALJ found Plaintiff has the following severe impairments: "migraines, cervical degenerative disc disease, depressive disorder, bipolar disorder, post-traumatic stress disorder (PTSD), carpal tunnel syndrome, somatic symptom disorder, and post concussive

syndrome." AR 27. The ALJ did not discuss lumbar left radiculopathy at Step Two or at any point throughout the remaining steps of the sequential evaluation process. *See* AR 27-38.

Dr. Heilbrunn, an acceptable medical source, evaluated Plaintiff and diagnosed her with lumbar left radiculopathy.[2] AR 547. Plaintiff's left-sided lumbar radiculopathy causes functional limitations which impact her ability to perform basic work activities. In particular, Dr. Heilbrunn opined Plaintiff "could be expected to sit for at least 20 minutes interrupted . . . and has a maximum sitting capacity of 3-4 out of 8 hours, *with limitation justified by lumbar left radiculopathy*." AR 547 (emphasis added). Dr. Heilbrunn further opined Plaintiff "could be expected to stand/walk for at least 20 minutes uninterrupted . . . and has a maximum standing/walking capacity of 3-4 out of 8 hours*, with limitation justified by lumbar left radiculopathy*." AR 547 (emphasis added).

Thus, the ALJ failed to discuss Plaintiff's diagnosis of left-sided lumbar radiculopathy at Step Two, and also failed to discuss significant, probative evidence showing Plaintiff's lumbar radiculopathy is a medically determinable impairment which causes functional limitations. *See* AR 27, 547. Accordingly, the ALJ erred at Step Two. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject significant probative evidence without explanation").

Furthermore, the undersigned finds Plaintiff's left-sided lumbar radiculopathy is a severe impairment, as an acceptable medical source diagnosed Plaintiff with this impairment and it causes functional limitations which impact Plaintiff's ability to perform basic work activities.

---

[2] Although they did not diagnosis Plaintiff with lumbar radiculopathy, at least two other acceptable medical sources reported symptoms related to Plaintiff's lumbar spine. Dr. Matthew M. Oswin, D.O., noted Plaintiff exhibited "decreased range of motion and tenderness" in her lumbar back. AR 560. Dr. Jeremy A. Ginoza, D.O., likewise noted Plaintiff had "chronic" low back pain which made it painful for her to stand or sit. AR 658.

*See* AR 547. For example, Plaintiff's lumbar radiculopathy limits her to a maximum sitting capacity of three-to-four hours, and a maximum standing/walking capacity of three-to-four hours, of an eight hour work day. AR 547. Therefore, the Court concludes Plaintiff's left-sided lumbar radiculopathy is a severe impairment.

B. Harmless Error

While the ALJ erred by failing to discuss Plaintiff's severe impairment of lumbar radiculopathy, the Court must determine whether the error is harmless. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)). If the ALJ accounts for all Plaintiff's limitations in assessing the RFC, the Step Two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Defendant maintains any error at Step Two regarding Plaintiff's lumbar radiculopathy is harmless because "the ALJ acknowledged the effects Plaintiff's alleged left lumbar radiculopathy within his decision." Dkt. 16, pp. 14-15 (citing *Lewis*, 498 F.3d at 911, *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)). Defendant's assertion is not supported by the record, however. While the ALJ broadly noted Plaintiff suffers from "back pain" and has limited

range of motion in her lumbar spine, he did not discuss the diagnosis of lumbar radiculopathy in particular. *See* AR 31-33.

Defendant also argues the ALJ "properly rejected the opinions of Dr. Heilbrunn and therefore his diagnosis of lumbar radiculopathy was properly considered and addressed by the ALJ." Dkt 16, pp. 13-14. Yet as discussed above, the ALJ did not properly consider Plaintiff's lumbar radiculopathy or its possible functional limitations because he failed to discuss this diagnosis. Hence, the Court cannot conclude whether the weight the ALJ gave to Dr. Heilbrunn would have changed if the ALJ had properly considered this severe impairment. As such, the undersigned recommends the ALJ be directed to reconsider Dr. Heilbrunn's opinion in light of all of Plaintiff's severe impairments.

In sum, the ALJ erred at Step Two because he failed to discuss significant, probative evidence showing Plaintiff's lumbar radiculopathy is a medically determinable impairment which causes functional limitations. If the ALJ had properly considered Plaintiff's lumbar radiculopathy at Step Two, the RFC and hypothetical questions posed to the vocational expert may have contained additional limitations, such as the limitation that Plaintiff has a maximum standing/walking capacity of three-to-four hours of an eight hour work day. The ALJ's failure to properly consider Plaintiff's lumbar radiculopathy at Step Two and throughout the remaining sequential evaluation process impacts the ultimate disability decision. Accordingly, the ALJ's error at Step Two is harmful and requires remand.

The ALJ's Step Two error requires remand for proper consideration of Plaintiff's severe impairments and reconsideration each of the remaining steps in the administrative process incorporating Plaintiff's lumbar radiculopathy and the limitations possibly caused by this additional severe impairment. As the ALJ's error at Step Two impacts all aspects of the ALJ's

decision, the Court recommends the ALJ be instructed to re-evaluate this entire matter on remand, completing each step of the sequential evaluation process.[3]

## II. Whether the ALJ properly weighed the medical opinion evidence.

Plaintiff next argues the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to reject medical opinion evidence from Dr. Bartlett.[4] Dkt. 10, pp. 13-14.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Dr. Bartlett conducted a psychological evaluation of Plaintiff on March 7, 2014. AR 550-58. During the examination, Dr. Bartlett discussed with Plaintiff her developmental and family

---

[3] While the undersigned finds Plaintiff's lumbar radiculopathy is severe, the undersigned makes no determination regarding how this severe impairment will impact the ALJ's evaluation of the remaining sequential evaluation process, including Plaintiff's credibility, the medical opinion evidence, and Plaintiff's RFC.

[4] Plaintiff also contends the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for giving Dr. Heilbrunn's opinion little weight. Dkt. 10, pp. 7-13. As discussed above, the ALJ failed to properly consider Dr. Heilbrunn's diagnosis of lumbar radiculopathy and the relevant opined limitations. Because the Court cannot conclude whether the weight given to Dr. Heilbrunn would change if the ALJ properly considered all of Plaintiff's severe impairments, the undersigned recommends the ALJ be directed to reconsider Dr. Heilbrunn's opinion on remand.

history, medical history, psychiatric history, and educational and vocational history. AR 551-52. Dr. Bartlett also conducted psychological and cognitive tests on Plaintiff, including Trailmaking Tests, a Brief Cognitive Screening Exam, and a Wechsler Memory Scale – Fourth Edition ("WMS-IV"). AR 553-57.

Dr. Bartlett made several findings regarding Plaintiff's functional limitations. AR 554-55. For example, Dr. Bartlett opined Plaintiff had "significant memory impairment as reflected in both her testing efforts and interview responses." AR 554. In particular, Dr. Bartlett found Plaintiff's "performances on tasks of mental control were deemed compromised," as she was "quite slow" counting backwards from twenty to one and in naming the months of the year in reverse order. AR 554. On the WMS-IV, Plaintiff's scores "were uniformly compromised, with her strongest level of performance at the 4th percentile for the Visual Working Memory Index." AR 554. Plaintiff exhibited "very little learning" with regard to her verbal learning ability, as well. AR 554.

In addition to her memory and cognitive limitations, Dr. Bartlett stated Plaintiff was "severely compromised" in her ability to cope with "comprehending, recalling, executing, and making judgments about both simple and complex work tasks" compared to the expectations for a full-time workday and workweek. AR 555. Dr. Bartlett moreover opined Plaintiff had "marked to severe difficulty" responding to "occasional novel changes in her usual work situation," and a "severe impairment in her ability to learn a new job adequately." AR 555. Further, Dr. Bartlett found Plaintiff impaired in her ability to interact with customers, co-workers, and supervisors due to her memory impairment. AR 555. Lastly, Dr. Bartlett opined Plaintiff was severely impaired "in her ability to maintain stable on-the-job relationships over time." AR 555.

The ALJ summarized some of Dr. Bartlett's findings and then gave them "little weight," stating:

> (1) Though the claimant performed poorly on formal testing administered by Dr. Bartlett, she was not engaged in any significant mental health treatment at this time. Records from after the time the claimant began therapy show improved mental status evaluations and do not document the degree of impairment Dr. Bartlett opines. (2) Furthermore, despite the drastic social limitations opined by Dr. Bartlett, the claimant previously reported adequate social functioning and stated that she regularly spent time with friends and her family (4F/3).

AR 35 (numbering added).

The ALJ first gave little weight to Dr. Bartlett's opinion because Plaintiff was not engaged in mental health treatment at the time of Dr. Bartlett's evaluation, and records from after Plaintiff began treatment "do not document the degree of impairment Dr. Bartlett opines." AR 35. An ALJ cannot use a conclusory statement to reject a doctor's findings; rather, the ALJ must state his interpretations and explain why they, rather than the doctors' interpretations, are correct. *See Embrey*, 849 F.2d at 421-22. Here, the ALJ asserted that records from when after Plaintiff began treatment showed a lesser degree of impairment than Dr. Bartlett's opinion. AR 35. Yet the ALJ provide no explanation of how the later records showed improvement that specifically contradicted Dr. Bartlett's opinion, nor did he provide citations to the record to support his assertion. *See* AR 35. Therefore, the ALJ erred, as this was not a specific, legitimate reason for giving Dr. Bartlett's opinion little weight. *See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts she claims "point toward an adverse conclusion and make[] no effort to relate any of these objective factors to any of the specific medical opinions and findings she rejects").

Additionally, to the extent the ALJ discounted Dr. Bartlett because Plaintiff was not in treatment at the time of the evaluation, the fact that a claimant "did not seek treatment for a mental condition until late in the day is not a substantial basis on which to conclude that [a

physician's] assessment of [a] claimant's condition is inaccurate." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Accordingly, the ALJ's first reason for discounting Dr. Bartlett's opinion was not a specific and legitimate reason, supported by substantial evidence, for doing so.

Second, the ALJ gave little weight to Dr. Bartlett's opinion because the "drastic social limitations opined by Dr. Bartlett" were inconsistent with Plaintiff's previous reports of "adequate social functioning." AR 35. An ALJ may discount a doctor's findings if those findings appear inconsistent with a plaintiff's daily activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Once again, however, the ALJ provided a conclusory statement, as he failed to explain how Plaintiff's social functioning contradicted particular findings by Dr. Bartlett. Hence, this was not a specific, legitimate reason, supported by substantial evidence, to discount Dr. Bartlett's opinion. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (the ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings").

For the above stated reasons, the Court concludes the ALJ failed to provide specific, legitimate reasons supported by substantial evidence for giving little weight to Dr. Bartlett's opinion. Therefore, the ALJ erred. Had the ALJ properly considered Dr. Bartlett's opinion, the RFC and the hypothetical questions posed to the vocational expert may have included additional limitations. For instance, the RFC and hypothetical questions may have included that Plaintiff was severely compromised in her ability to conduct simple tasks, had marked to severe limitations responding to occasional work setting changes, and was severely impaired her ability to learn a new job. The RFC and hypothetical questions posed to the vocational expert did not

contain these limitations. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

### III. Whether the ALJ provided specific, clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

Plaintiff further contends the ALJ failed to give clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. Dkt. 10, pp. 14-17. The ALJ committed harmful error at Step Two and in his assessment of the medical opinion evidence. *See* Sections I & II, *supra*. Because the ALJ's reconsideration of Step Two and the medical opinion evidence may impact his assessment of Plaintiff's subjective testimony, the Court recommends the ALJ be directed to reconsider Plaintiff's subjective testimony on remand.

The Court also notes, on March 28, 2016, the Social Security Administration changed the way it analyzes a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24, 2016). The term "credibility" will no longer be used. 2016 WL 1119029, at *1. Further, symptom evaluation is no longer an examination of a claimant's character. *See id*. at *10 ("adjudicators will not assess an individual's overall character or truthfulness"). The ALJ's decision here – dated December 3, 2015 – was issued before SSR 16-3p became effective. Thus, the ALJ did not err by failing to apply SSR 16-3p. However, on remand, the ALJ is directed to apply SSR 16-3p when evaluating Plaintiff's subjective symptom testimony.

### IV. Whether the ALJ's Step Five findings were supported by substantial evidence.

Additionally, Plaintiff argues the ALJ's Step Five finding is unsupported because the vocational expert's testimony "was given in response to an incomplete hypothetical" that failed to include all of Plaintiff's physical and mental limitations. Dkt. 10, pp. 17-18.

The ALJ committed harmful error at Step Two and by failing to properly consider the medical opinion evidence. *See* Sections I & II, *supra*. Accordingly, the undersigned recommends the ALJ be ordered to reassess the RFC on remand. *See* SSR 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, the undersigned recommends he also be ordered to re-evaluate the findings at Step Five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform in light of the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider two doctors' findings).

**V.     Whether the case should be remanded for an immediate award of benefits.**

Lastly, Plaintiff requests the Court vacate the ALJ's decision and find Plaintiff disabled. Dkt. 10, p. 1.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the

record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

The Court has determined, on remand, the ALJ must re-evaluate this entire matter properly considering all of Plaintiff's severe impairments and the medical opinion evidence. Therefore, remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the above stated reasons, the undersigned recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. The undersigned also recommends judgment be entered for Plaintiff and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on December 15, 2017, as noted in the caption.

Dated this 30th day of November, 2017.

_____
David W. Christel
United States Magistrate Judge